IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

WILLIAM STONE,                            *
                                          *
          Plaintiff,                      *
                                          *     Civil No. TMD 14-2338
     v.                                   *
                                          *
                                          *
CAROLYN W. COLVIN,                        *
Acting Commissioner of Social Security,   *
                                          *
          Defendant.                      *
                              ***********

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

William Stone ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and

1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment

(ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 21).[1]  Plaintiff

contends that the administrative record does not contain substantial evidence to support the

Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the

reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**,

Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, and the Commissioner's

final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**I**

**Background**

Plaintiff was born in 1963, has a GED, and previously worked as a tree trimmer/laborer. R. at 16, 24.  On March 16, 2012, Plaintiff protectively applied for disability insurance benefits ("DIB") and SSI, alleging disability since birth due to seizures and torn ligaments in his right knee.  R. at 10, 132-42, 158.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 33-88.  Plaintiff then amended his alleged onset date of disability to January 24, 2012, and withdrew his application for DIB.  R. at 10, 206.  On April 16, 2013, ALJ Eugene Bond held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 20-32.  On April 24, 2013, the ALJ issued a decision finding Plaintiff not disabled since the application date of March 16, 2012.  R. at 7-18.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 22, 2014. R. at 1-6.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 23, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

**II**

**Summary of Evidence**

A.      **State Agency Medical Consultants**

On May 7, 2012, a state agency consultant, S. Rudin, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 37-39, 45-47.  Dr. Rudin opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 37, 45.  Because of Plaintiff's history of seizures, he occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 37-38, 45-46.  Plaintiff also had to avoid all exposure to hazards, such as machinery and heights.  R. at 38, 46.  Plaintiff had no manipulative, visual, or communicative limitations, however.  R. at 38, 46.

On June 15, 2012, another state agency medical consultant, Henry Scovern, M.D., also assessed Plaintiff's physical RFC.  R. at 56-58, 66-68.  Dr. Scovern opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 57, 67.  Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 57, 67.  Although he had no manipulative, visual, or communicative limitations, Plaintiff was to avoid all exposure to hazards.  R. at 57-58, 67-68.

**B.      Hearing Testimony**

      **1.      Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony: "At the hearing, [Plaintiff] alleged disability due to a seizure disorder.  He testified that he has seizures two to three times per week despite compliance with treatment.  He reports that he has residual dizziness and walks with an awkward balance."  R. at 14.  Plaintiff also submitted at the hearing the calendars of his girlfriend, who had logged his seizures from January 2012 to April 2013.  R. at 27, 209-25.

      **2.      VE Testimony**

According to the VE, a hypothetical person with Plaintiff's same age, education, and work experience who had the ability to (1) do unskilled, light work[2] with a sit-stand option at will; (2) follow simple instructions routinely; (3) interact with supervisors, co-workers, and the general public frequently; (4) use judgment in making simple, work-related decisions; and to (5) perform work that did not require satisfying production quotas could perform the jobs of router, counter clerk, or office helper.  R. at 29.  Her testimony regarding a sit-stand option is based on her experience and knowledge rather than on the *Dictionary of Occupational Titles*.[3]  R. at 30.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*  "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id.*  "If someone can do light work, [the Commissioner determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007);

## III

## Summary of ALJ's Decision

On April 24, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of March 16, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a router, counter clerk, or office helper.  R. at 12-17.  The ALJ thus found that he was not disabled from March 16, 2012, through the date of the decision.  R. at 17.

In so finding, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 416.967(b) with a sit/stand option at will.  [Plaintiff] is restricted to unskilled work."[4] R. at 13.  The ALJ gave "significant probative weight" to the opinions of Drs. Rudin and Scovern "because they were privy to the medical record.  While the undersigned found [Plaintiff] capable of work at the light exertional level, a high [sic] level than opined by the consultants

---

*see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).

based upon [Plaintiff's] hearing testimony, the residual functional capacity encompasses the ability to perform sedentary work."[5]  R. at 16 (citations omitted).

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite

his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).    The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R.

§§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical

evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to

perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national   economy.     *See   Walls*,   296   F.3d   at   290;   20   C.F.R.   §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**<u>Substantial Evidence Standard</u>**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security

Ruling[7] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-10,

ECF No. 20-1.  He maintains that the ALJ failed to perform properly a function-by-function

assessment of his ability to perform the physical and mental demands of work.  *Id.* at 5.  In

particular, Plaintiff asserts that the ALJ failed to include in the RFC assessment any limitation

related to his seizure disorder, despite finding that the seizure disorder was a severe impairment

at step two of the sequential evaluation process.  *Id.* at 5-6.  Plaintiff also contends that the ALJ

failed to evaluate properly the state agency consultants' opinions.  *Id.* at 6-10.  Plaintiff further

asserts that the ALJ failed to develop properly the administrative record.  *Id.* at 10-12.

**A.     ALJ's RFC Assessment**

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions" listed in the regulations.  "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."  The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and
interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).
Once published, these rulings are binding on all components of the Social Security
Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984);
20 C.F.R. § 402.35(b)(1).   "While they do not have the force of law, they are entitled to
deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204
n.3.

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.  *Id.* at 637.

Plaintiff first contends that the ALJ failed to include in the RFC assessment any limitation related to his seizure disorder, which the ALJ found to be severe.  Pl.'s Mem. Supp. Mot. Summ. J. 3-6, ECF No. 20-1.  "To the extent [Plaintiff] suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit," however.  *Burkstrand v. Astrue*, 346 F. App'x 177, 180 (9th Cir. 2009) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009)).  As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing

*Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four."), *report and recommendation adopted*, No. C13-3021-MWB, 2014 WL 2884028 (N.D. Iowa June 25, 2014); *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013) ("[A]n ALJ is not required to include a corresponding limitation for each severe impairment."). The ALJ thus did not err at steps two and four. In addition, as Defendant points out, Plaintiff has not identified any additional limitation resulting from his seizure disorder that the ALJ should have included in the RFC assessment (Def.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 21-1). *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("[The claimant] has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim."). Plaintiff's argument in this regard thus is unavailing.

Plaintiff further maintains that the ALJ failed to evaluate properly the opinions of Drs. Rudin and Scovern, the state agency consultants who opined that Plaintiff was capable of standing and/or walking for only two hours in an eight-hour workday (R. at 37, 45, 57, 67). According to Plaintiff, the ALJ erroneously found that he was capable of performing work at the light exertional level, which encompasses the ability to perform sedentary work.  Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 20-1.  Plaintiff contends that his hearing testimony does not support an RFC assessment greater than sedentary work.  *Id.*  Plaintiff also maintains that, although the ALJ gave "significant probative weight" to the state agency consultants' opinions, the ALJ did not include in the RFC assessment their opinions regarding his ability to stand, walk, balance, stoop, kneel, crouch, crawl, climb, and to be exposed to hazards.  *Id.* at 7.

Plaintiff's assertions are unavailing.  Although Plaintiff maintains that the ALJ erred in finding that his hearing testimony supported his capability to perform light work, he testified that he took care of his 77-year-old father, who "needs a scooter to get around."  R. at 25.  The ALJ also found that Plaintiff had reported in a function report that he "takes care of his elderly father, whom he helps to bathe on a daily basis.  [Plaintiff] reports having to lift his father into and out of the tub with the assistance of his girlfriend, which would be comparable to lifting an object over 100 pounds."  R. at 15 (citing R. at 184-93); *see* R. at 185.  Plaintiff further reported cutting his grass using a riding mower every week or every other week for one hour.  R. at 25, 186. Substantial evidence of Plaintiff's daily living activities thus supports finding that Plaintiff could lift and carry at a level beyond the sedentary exertional level.

The full range of light work requires the ability to stand and walk for six hours out of an eight-hour workday, however.  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  Plaintiff thus contends that the ALJ's RFC assessment of light work contradicts the state agency consultants'

opinions that he was limited to standing and/or walking for a total of two hours in an eight-hour

workday (R. at 37, 45, 57, 67).  Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 20-1; *see* SSR 83-

10, 1983 WL 31251, at *5 ("Jobs are sedentary if walking and standing are required occasionally

and other sedentary criteria are met. . . . Since being on one's feet is required 'occasionally' at

the sedentary level of exertion, periods of standing or walking should generally total no more

than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6

hours of an 8-hour workday.").  However, "an RFC limiting standing or walking to about two

hours does not mandate a finding that [a claimant] could *only* perform sedentary work." *Hence*

*v. Astrue*, No. 4:12CV1, 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012), *report and*

*recommendation adopted*, No. 4:12CV1, 2012 WL 6697109 (E.D. Va. Dec. 21, 2012).  Rather,

the state agency consultants' opinions regarding Plaintiff's capacity to stand and/or walk in an

eight-hour workday "rendered [him] capable not only of sedentary work, but of a reduced range

of light work that would permit [him] to sit for the majority of the workday." *Norris v. Comm'r,*

*Soc. Sec.*, Civil No. WDQ-13-2426, 2014 WL 2612367, at *4 (D. Md. June 9, 2014); *see Carroll*

*v. Colvin*, Civil No. TMD 14-921, 2015 WL 5008738, at *3 (D. Md. Aug. 20, 2015) (noting

VE's testimony that "[a] person could perform less than the full range of sedentary and light

work if that person could lift and carry no greater than 10 pounds frequently or 20 pounds

occasionally, walk or stand for two hours in an eight-hour workday for 15 to 30 minutes at a

time, and sit for up to six hours in an eight-hour workday for 15 to 30 minutes at a time").  The

ALJ appropriately included a sit-stand option in the RFC assessment, and the VE testified that

there were light jobs that allowed a worker to sit or stand at will (R. at 29-30).  Because the state

agency consultants' opinions on which the ALJ relied support an RFC assessment of a reduced

range of light work, Plaintiff's argument to the contrary is without merit.  *See Norris*, 2014 WL

2612367, at *4 ("The ALJ appropriately included a provision in [the claimant's] RFC assessment that she 'must have the option to alternate between sitting and standing.' As the VE testified, there are light jobs, specifically 'bench positions,' allowing a worker to sit or stand at will. Because [the claimant] is capable of performing that category of light work positions, the ALJ's finding comports with the provisions of SSR 83-10." (citations omitted)).

Plaintiff also asserts that substantial evidence does not support the ALJ's RFC assessment because it did not include the state agency consultants' opinions regarding his postural and environmental limitations. Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 20-1. These limitations are not implicated in the jobs of router, counter clerk, and officer helper, however. *See* DOT 222.587-038, 1991 WL 672123 (router) (involving no climbing, balancing, stooping, kneeling, crouching, crawling, or hazards); DOT 249.366-010, 1991 WL 672323 (counter clerk) (same); DOT 239.567-010, 1991 WL 672232 (officer helper) (requiring occasional stooping but not involving climbing, balancing, kneeling, crouching, crawling, or hazards). Thus, even if the ALJ had included in his RFC assessment the postural and environmental limitations as opined by the state agency consultants, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009); *see Coles v. Astrue*, Civil No. JKS 08-321, 2009 WL 3380334, at *3 (D. Md. Oct. 16, 2009) ("[E]ven if the ALJ had adopted [the state agency consultant's] non-exertional limitations, [the claimant] would still be capable of light work and the RFC would be unchanged. *See* Soc. Sec. Ruling 83-14 at *4-5 (certain non-exertional limitations, including but not limited to the 'inability to ascend or descend scaffolding, poles, and ropes' do not significantly affect the ability to perform work).").
Plaintiff's argument in this regard thus is without merit as well.

**B.**     **ALJ's Duty to Develop the Record**

Plaintiff finally asserts that the ALJ failed in his duty to develop the record during the eleven-minute hearing because the ALJ asked Plaintiff "no questions regarding the nature of his medical treatment, no questions regarding his frequency of his seizures, no questions regarding his knee condition, no questions regarding his functional limitations, and no questions regarding his subjective complaints, such as pain, dizziness, and residual effects of his seizures."   Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 20-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003)).   According to Plaintiff, the ALJ thus "failed in his duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,'" and so failed to develop properly the administrative record.   *Id.* at 12 (relying on *Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981)).   For the reasons stated below, Plaintiff's contention is without merit.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."   *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).   In cases where the claimant is not represented by counsel, "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."   *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).   "The length or brevity of a benefits hearing . . . is not dispositive of whether or not the ALJ has met his or her obligation to adequately develop the record."   *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).   The more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what ongoing treatment and medication the claimant is receiving, and (3) the

16

impact of the alleged impairment on a claimant's daily routine and activities.   *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992).   "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."   *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).   "Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development."   *Id.*

In this case, the ALJ inquired at the hearing about the nature of Plaintiff's alleged knee impairment and his daily living activities.   R. at 24-26.   In response to his attorney's questions, Plaintiff testified about the frequency and effect of his seizures.   R. at 26-27.   Exhibits in the record elaborated on Plaintiff's impairments and how they allegedly affected his activities and exertional limitations.   R. at 184-93, 209-25.   Plaintiff thus fails to demonstrate how further questioning, a longer hearing, or a fuller record reasonably would have led to a different decision.   *Cf. Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980).   In this case, where Plaintiff was represented by counsel who had the opportunity to inquire into the issues requiring further development, the Court concludes that the ALJ satisfied his duty to develop the record.   *Cf. Walker*, 642 F.2d at 714 (holding that claimant suffered clear prejudice from absence of counsel and from ALJ's passive role); *Fleming*, 284 F. Supp. 2d at 276 ("[W]here absence of counsel creates clear prejudice or unfairness to claimant, a remand to the [Commissioner] is proper.").

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.   Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.   The

Commissioner's decision is **AFFIRMED**.  A separate order shall issue.


Date: September 9, 2015                                              /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge